IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

IN RE WINTER STORM URI
NATURAL GAS LITIGATION

Case No. 24-1073-DDC-ADM

**MEMORANDUM AND ORDER**

This action consists of five separate cases that the court consolidated for discovery and pretrial case-management purposes. In each case, Kansas purchasers of natural gas bring claims under the Kansas Consumer Protection Act against defendant natural-gas suppliers based on defendants' actions during Winter Storm Uri in 2021. The action is before the court on Plaintiffs' Motion to Compel. (ECF 271.) By way of the motion, plaintiffs ask the court to (1) overrule defendants' objections to producing documents related to defendants' natural-gas deliveries outside of Kansas, and (2) compel defendants to produce documents they provided to the Kansas Corporation Commission and the Kansas Attorney General's Office in conjunction with those entities' investigations of natural-gas sales during Winter Storm Uri. For the reasons discussed in further detail below, the motion is denied without prejudice as to the first request and granted as to the second request.

**I.   BACKGROUND**

Plaintiffs are Kansas purchasers of natural gas who bring purported class actions against natural-gas producers and suppliers. They allege that defendants violated the Kansas Consumer Protection Act ("KCPA") by unconscionably raising the price of natural gas sold to distributors during Winter Storm Uri, thereby profiting from a disaster. Plaintiffs did not transact directly with defendants, but instead purchased their gas from the non-party distributors. Plaintiffs contend that the distributors will pass on the exorbitant price hike to plaintiffs for years to come.

Shortly after plaintiffs filed these cases, defendants filed a joint consolidated motion to dismiss (ECF 3) and some defendants also filed individual motions to dismiss (ECF 5, 10-12, 16, 17, 20, and 21). Defendants then sought a stay of discovery pending the court's ruling on the motions to dismiss. (ECF 49.) Defendants noted that the ruling could end some or all of the cases, such that expansive discovery would be wasteful and burdensome. (ECF 50, at 2-3.) The court declined to issue a wholesale discovery stay, but left open the door for defendants to seek a protective order as to particular discovery that would be more appropriately pursued after a ruling on the motions to dismiss. (ECF 128, at 6.) The motions to dismiss are currently pending before presiding U.S. District Judge Daniel D. Crabtree.

Plaintiffs served requests for production of documents ("RFPs") on defendants in each of the five cases. Defendants objected to a number of RFPs on the ground, among others, that they sought information related to transactions outside of the Kansas border, making them irrelevant to plaintiffs' KCPA claims. Defendants generally limited their responses to these RFPs to deliveries of natural gas in Kansas (albeit with variations in the phraseology of their objections).

Plaintiffs also served RFPs seeking documents defendants produced in response to subpoenas or document requests from governmental entities related to natural-gas sales during Winter Storm Uri. The Kansas Attorney General's Office ("AG's Office") had issued investigative subpoenas to various natural-gas producers, marketers, and distributors, including to defendants. Similarly, the Kansas Corporation Commission ("KCC"), which regulates public utilities in Kansas, had issued regulatory subpoenas to defendants as part of its investigation into distributors' actions during the storm and the distributors' future intentions regarding passing along natural-gas charges to customers. Defendants objected to these RFPs on the ground that they impermissibly sought "clone discovery."

The parties met and conferred in an attempt to resolve defendants' RFP objections. When their efforts were unsuccessful, they requested a discovery conference with the court. The court convened a conference on October 16. After hearing the parties' positions, the court set the matter for motion briefing. (ECF 251.) On November 6, plaintiffs filed the instant motion to compel.

## II.   GEOGRAPHIC-SCOPE OBJECTION

Plaintiffs first ask the court to overrule defendants' objection, asserted in response to a number of RFPs, that information about natural-gas deliveries made outside of Kansas is not relevant to the KCPA claims (and defenses thereto) asserted in these cases. Because the application of the KCPA to out-of-state transactions is an issue squarely before Judge Crabtree on multiple motions to dismiss (*see* ECF 4, 5, 21, 56, 62, 65, 97, and 102), it is not appropriate for the court to decide this later-raised discovery issue implicating that question. Doing so would risk inconsistent rulings and would not be an efficient use of judicial resources. Thus, the court declines to substantively address this portion of plaintiffs' motion at this procedural juncture.

In the court's order denying defendants' motion to stay discovery pending a ruling on their motions to dismiss, the court anticipated a situation like the one that has arisen here. (ECF 128, at 6.) The court provided a path for defendants to delay responding to particular discovery whose relevance would be determined by the court's ruling on their motions to dismiss. Although the court had envisioned this issue being presented by way of a defensive motion for protective order, defendants' geographic-scope objections have led us to the same point. In essence, defendants seek protection from responding to the RFPs implicated here until the court decides their motions to dismiss. This approach is appropriate under the circumstances.

Significantly, after Judge Crabtree addresses the geographic reach of the KCPA, the case schedule provides the parties 90 days to conduct and substantially complete written discovery.

3

(ECF 285, at 3.) Should plaintiffs, following the ruling on the motions to dismiss, continue to contend that the implicated RFPs seek relevant information, they are directed to meet and confer with defendants about this discovery within 14 days. If the parties do not resolve the matter, they may seek a discovery conference within 21 days of the motion-to-dismiss ruling. The court sets these deadlines now in recognition of the 90-day, substantial-completion deadline.

Should plaintiffs ultimately re-file their motion to compel RFP responses without the geographic-scope objections, the court will expect them to address the distinctions between each RFP. In plaintiff's current motion, they ask the court to overrule defendants' geographic-scope objection asserted in responses to multiple RFPs, rather than framing the dispute as a motion to compel responses to specified RFPs. In other words, they seek a categorical thumbs-up or thumbs-down for all transactions occurring outside Kansas. But this is not procedurally proper because it would be nearly impossible (and certainly not prudent) for the court to consider this geographic-scope objection in the abstract, devoid from the context of the particular RFP(s) at issue. For example, some RFPs reference transactions in specific states (including states outside Kansas), while others reference activity at "Relevant Platts Locations," which plaintiffs defined as seven separate pipeline locations. And some RFPs seek information about all natural-gas purchases made by plaintiffs' distributors during Winter Storm Uri, without limit to whether such gas was ever brought into Kansas. Further, in some instances, defendants have produced documents despite their objection, and plaintiffs have not addressed whether they believe additional, relevant information exists. Should plaintiffs renew their motion at some point in the future, they would be well advised to address the RFPs on a more individualized basis.

### III.    DISCOVERY OF SUBPOENA RESPONSES

The second request in plaintiffs' motion is for the court to compel defendants to produce documents defendants provided to the KCC and the AG's Office in conjunction with those entities' investigations of natural-gas sales during Winter Storm Uri.  (*See* RFPs 24 and 25, ECF 271-1.) Defendants' principal objection to such discovery is that it is overbroad "clone discovery," in that plaintiffs did not limit the requests to the specific claims and defenses in this litigation.  Defendants suggest that the requests could refer to *any and all* documents *related to any* government subpoena with *no* geographic limit.   (ECF 288, at 1, 8.)

Defendants' arguments appear to be mis-focused on RFPs 24 and 25 as originally written, rather than as narrowed during the meet-and-confer process.  Plaintiffs represent that, as narrowed, their requests are seeking documents defendants actually provided to the KCC and the AG's Office (and not other documents so "related to") in response to the entities' subpoenas about defendants' natural-gas sales during Winter Storm Uri, limited in scope to Kansas.  (ECF 292, at 3.)  Plaintiffs move to compel documents that fall under this narrowed version of the RFPs, so that will be the court's focus here.

As narrowed, the court finds this discovery facially relevant.  Relevance is "construed broadly to encompass any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case."  *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978).  Defendants' natural-gas sales during Winter Storm Uri are at the heart of plaintiffs' KCPA allegations here.  As such, information provided in response to subpoenas seeking this same information clearly could bear on issues in this case.  Because the discovery sought is relevant on its face, the burden shifts to defendants to support their objections.  *See Ad*

*Astra Recovery Servs., Inc. v. Heath*, No. 18-1145-JWB, 2019 WL 2448569, at *2 (D. Kan. June 12, 2019).

In objecting to plaintiffs' requests for documents that defendants produced in response to subpoenas, defendants rely heavily on a handful of cases from other districts ruling that such "clone discovery" is "inherently overbroad." (ECF 288, at 10.) It does not appear that either the Tenth Circuit or courts in this district have addressed the appropriateness of clone discovery as a general matter, and the court need not decide the question here. Rather, the court considers whether defendants have met their burden of demonstrating the discovery request is overly broad and not relevant.

Perhaps because defendants mistakenly placed the burden on plaintiffs to demonstrate relevance, rather than recognizing that the burden falls on them to support their objections,[1] defendants have offered little to demonstrate the irrelevance of plaintiffs' requests. Defendants complain that the AG's Office subpoena "addressed statutes other than the KCPA, like the Kansas False Claims Act." (ECF 288, at 10.) But defendants have not attempted to explain why this matters, *i.e.,* why documents addressing the False Claims Act are not relevant to the claims or defenses in these actions. Similarly, defendants generally note that a governmental agency's "subpoena power can be broader than Rule 26," but again do not explain how plaintiffs' discovery request here is *over*broad—the fact that a discovery request is broad does not necessarily make it irrelevant. In the end, defendants have not carried their burden by asserting such general allegations of irrelevance. *See Sonnino v. Univ. of Kan. Hosp. Auth.*, 221 F.R.D. 661, 670-71 (D. Kan. 2004) (ruling that an objecting party "must specifically show in its response to the motion to

---

[1] Defendants repeatedly assert that "Plaintiffs fail to explain" the relevance of this subpoena discovery (ECF 288, at 10), but plaintiffs do not bear the burden.

compel, despite the broad and liberal construction afforded by the federal discovery rules, how each request for production or interrogatory is objectionable").

Finally, to the extent defendants' response to the motion could be read to assert an undue burden objection, such objection is overruled. Although defendants make the conclusory statement that the discovery sought is "too burdensome," they offer no support at all for the statement. Thus, they have not met their burden to support this objection. *See Pipeline Prods., Inc. v. Madison Companies, LLC,* No. 15-4890-KHV, 2018 WL 3055869, at *3 (D. Kan. June 20, 2018) (quoting *Horizon Holdings, L.L.C. v. Genmar Holdings, Inc*., 209 F.R.D. 208, 213 (D. Kan. 2002)) (ruling that the party asserting an undue burden objection has "the burden of showing facts justifying their objection by demonstrating that the time or expense involved in responding to requested discovery is unduly burdensome").

Because defendants have not supported their objections to producing the documents they turned over to the AG's Office and KCC, plaintiffs' motion to compel a response to RFPs 24 and 25, as narrowed, is granted. Defendants must produce responsive documents by **January 31, 2025.**

**IT IS THEREFORE ORDERED** that plaintiffs' motion to compel (ECF 271) is granted in part and denied without prejudice in part, as set forth above.

Dated January 21, 2025, at Kansas City, Kansas.

s/ Angel D. Mitchell  
Angel D. Mitchell  
U.S. Magistrate Judge